STEPHEN S. HART, ESQ.
HART LAW OFFICES, P.C.
482 Constitution Way, Suite 313
Idaho Falls, ID 83402-3537
Phone:  (208) 524-3272
Fax:  (208) 524-3619
Idaho State Bar # 1987

Email:  shart@hartlawif.com

Attorneys for Defendant, Tel James Boam

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TEL JAMES BOAM,<br><br>Defendant. | **Case No.  4:20-CR-00188-BLW-1**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT** |
|---|---|

Defendant Tel James Boam, through his attorney of record, STEPHEN S.HART, ESQ., submits this Supplemental *Memorandum In Support of Motion to Vacate or Set Aside Judgment.*

## I.

## LEGAL STANDARD

T.J. Boam was sentenced on seventeen (17) felonies on December 14, 2021.  Mr. Boam was at represented by Robin Dunn, an attorney from Rigby, Idaho.

Defendant requests his conviction be set aside or his sentence be reduced based upon ineffective assistance of counsel.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-1

The right to competent counsel is a **fundamental** right of a criminal defendant. It assures the fairness and legitimacy of the adversary process. *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L.Ed.2d 305 (1986) (emphasis added).

The right to counsel is the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. at 688, 104 S. Ct. 2052. (2009)

The Supreme Court established a "two-part test" for ineffective assistance of counsel in *Strickland*, supra. The Strickland test required a defendant to show:

1.   Constitutionally deficient performance by counsel, i.e., below an objective standard of reasonableness, (*See Strickland* 466 U.S. at 688, 104 S. Ct. 2052); and,

2.   Prejudice, a reasonable probability, that but for the counsels' unprofessional errors, the result of the proceeding would have been different. (*Strickland* at 694, 104 S.Ct. 2052); *Porter v. McCollum*, 130 S.Ct. 447

*Strickland* described the essence of an ineffective assistance of counsel claim is when counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair, and an unfair verdict is rendered suspect. To establish ineffective assistance of counsel, the defendant must show that counsel's representation was below an objective standard of reasonableness. To show prejudice the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, that the result of the proceeding would have been different. (*Strickland* at 694, 104 S.Ct. 2052 (2009).

Deference is given where decisions were strategic and tactical choices made after thorough investigation. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

In 2021, the Ninth Circuit Court of Appeals re-affirmed the *Strickland* two-part test in its analysis of the incompetent counsel claim. *Washington v. Shinn*, 46 F. 4th 915 (9th Cir. 2021).

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-2

## II.

## COUNSEL'S REPRESENTATION OF DEFENDANT FELL BELOW ANY OBJECTIVE STANDARD OF REASONABLENESS

### A. ROBIN DUNN WAS THE LONGEST SERVING PROSECUTING ATTORNEY IN IDAHO:

To make an evaluation of Mr. Dunn's representation, one needs to examine the enormity of his background and experience. Mr. Dunn was the Prosecuting Attorney in Jefferson County, Idaho for thirty-four (34) years. He served as the City Attorney for the City of Rigby, Idaho for thirty (30) years.

Mr. Dunn prosecuted, through trial, many hundreds of serious felonies involving cases of first degree murder, rape and drug trafficking. Historical research for Jefferson County, Idaho crime statistics is sparse, but in 2015, the year prior to Mr. Dunn's departure from the Office of Prosecuting Attorney for Jefferson County, Idaho, he prosecuted twenty-one (21) burglaries; three (3) aggravated assaults; eighty-five (85) larceny cases; ten (10) motor vehicle thefts; thirty-three (33) assaults; seven (7) intimidation cases; thirty-six (36) vandalism cases, fourteen (14) drugs/narcotics cases; thirteen (13) drug equipment cases; nineteen (19) fraud cases; and, two (2) weapons violations. This list does not include the hundreds of cases prosecuted for the City of Rigby, Idaho, however the City of Rigby statistics are similar.

Mr. Dunn was the longest serving prosecutor in the State of Idaho. His re-election every term verified voter satisfaction in his skills and performance in prosecution of criminals year after year. Few attorneys in Idaho have greater experience and knowledge of criminal prosecutions, including but not limited to, pretrial orders, discovery deadlines, exhibit and witness disclosures deadlines. Mr. Dunn had a reputation for repeatedly stating that he had never lost a criminal case in Jefferson County. When one compares this immense experience with his

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-3

performance during the Boam trial the incongruity is alarming. Mr. Dunn was profoundly ineffective in his representation. The cause of the stark anomaly is speculative, but circumstantial evidence strongly suggests voluntary impairment due to drug use.

## B. TACTICS OR STRATEGY VS. INCOMPETENT COUNSEL:

A review of the transcript fails to divulge any logical strategy for Mr. Dunn's profound incompetence. It is submitted that the factors set out hereinafter defy legal logic and absolutely discount any strategy or legal tactic. It appears that Mr. Dunn did not develop any trial strategy whatsoever and failed to even reasonably prepare for the defendant's trial in this matter. *(See Declaration of Tel James Boam, Declaration of Evy Gilstrap and Declaration of Hailey Boam,* **Attachments A, B and C hereto)**.

## C. WAS MR. DUNN IMPAIRED DURING TRIAL?

The government's investigation of Mr. Dunn, of which this Court is very familiar, revealed he was extensively involved in drug conspiracies within a minimum of six (6) months of his representation of the defendant. According to a September, 2023 news release from the U.S. Attorney's Office, for the period of June, 2022 through February 19, 2023, "Dunn conspired with others to distribute fentanyl and methamphetamine in eastern Idaho."

Defendant's declaration verifies Mr. Dunn's inability to focus on preparation for his case. Defendant's declaration also addresses Mr. Dunn's "changed condition" after leaving meetings with the defendant for an hour or more and later returning all while defendant was waiting at Mr. Dunn's office for his return. As stated by the defendant in his Declaration, preparation conferences would involve minimal preparation time and then the remainder of the meeting would consist of Mr. Dunn reminiscing about his past. *(See Declarations of Tel James Boam and Gilstrap)*

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-4

## D. **NATURAL PROGRESSION OF DRUG INVOLVEMENT**

Addiction has both a psychological and a physical component. The physical component of addiction is called tolerance. Tolerance is a state in which a person needs to take more and more of a drug to receive the same effects.  It normally begins with initiation, proceeds to experimentation, and advances to regular use, next to tolerance which creates increased use, followed by risky use and later to dependence and finally addiction.  Addiction for many addicts over time eventually leads to purchasing and selling. According to the *American Addiction Centers "What are the Cycles" Dec. 17, 2024*

The common attributes of addiction include:

- Using more of the substance than the person originally planned.
- Being unable to stop using the substance.
- Experiencing relationship problems because of substance use.
- Spending large amounts of time seeking or using the substance or recovering from use.
- Reducing participation in favorite activities in favor of substance use.
- Being unable to keep up with responsibilities due to substance use.
- Craving the substance.
- Continuing to use the substance despite negative health effects.
- Manufacturing, and/or selling.

Addicted individuals begin the process of purchasing for their own habit.  Later it develops into distribution, and conspiracies to distribute for personal gain and to support what has become an expensive addiction.  *U.S. Dept of Justice Drugs and Crime Data Sept. 1994 NCJ 149286*

The circumstantial evidence of Mr. Dunn's addiction impairment is clear from defendant's Declaration and from Mr. Dunn's pre-trial and trial conduct before this Court.  Mr. Dunn's pre-trial conduct; trial preparation conduct; and, his trial conduct are the polar opposite of Robin Dunn the longest serving prosecuting attorney in Idaho who never lost a criminal case.

Mr. Dunn's trial conduct was an extraordinarily bizarre display of ineffective assistance of counsel, far below any objective standard of every classification. This anomaly is logically implausible without assuming that Mr. Dunn's drug usage predated his arrest to include the period of time he represented the defendant. It is illogical to assume Mr. Dunn began the process from initiation to addiction followed by distribution within six (6) months of defendant's representation. There is no direct evidence that Mr. Dunn was using drugs during his representation of defendant but there is substantial circumstantial evidence. Regardless of the cause, Mr. Dunn's representation fell far below an objective standard of reasonableness and substantively prejudiced the defendant.

## E.   DRUG USE CAUSES COGNITIVE DISORDERS

Well supported scientific evidence shows that disruptions in three areas of the brain are particularly important in the onset, development, and maintenance of substance use disorders. The three areas are the basal ganglia; the extended amygdala; and, the prefrontal cortex. These disruptions: (1) enable substance-associated cues to trigger substance seeking (i.e., they increase incentive salience); (2) reduce sensitivity of brain systems involved in the experience of pleasure or reward, and heighten activation of brain stress systems; and (3) reduce functioning of brain executive control systems, which are involved in the ability to make decisions and regulate one's actions, emotions, and impulses. *National Institute of Health, The Neurobiology of Substance Use, Misuse, and Addiction, p. 5*

## F.   *DEFACTO* LIFE SENTENCE

Defendant was represented by Mr. Dunn at the sentencing held December 14, 2021. Defendant received a *defacto* life sentence. Defendant was sentenced to forty five (45) years of incarceration with lifetime supervision thereafter. Defendant was thirty nine (39) years of age on

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-6

the date of sentencing. Defendant will not be released from incarceration until he is approximately eighty four (84) years old. A *defacto* life sentence is defined by the U. S. Sentencing Commission as a term of 470 months or more. A non-incarcerated individual's current median life expectancy is eighty one and 9/10 (81.9) years. An incarcerated individual's life decreases significantly. Prisoners have increased exposure to health risks and mortality during prison incarceration. Prisons are overcrowded and unsanitary. Prison populations are exposed to chronic and acute distress.

In studies following a cohort of prisoners spanning approximately ten (10) years, it was determined that each additional year in prison increases the odds of dying by sixteen percent (16%) which is approximately a two (2) year decline in adult life expectancy. *The Consequences of Incarceration for Mortality in the United States, Published in final edited form as: Demography. 2020 Apr; 57(2):577–598.*

Additional studies conclude that each year that someone spends in prison cuts their life expectancy by two (2) years. *Health Care Behind Bars: Am Jur Public Health, 2013 March, 103(3) 525-528.*

Unless the current sentence is reversed or reduced, defendant will absolutely die in prison. When human lives hang in the balance, the required representation tests the best of attorneys as it becomes the solemn, moral and legal duty and responsibility of the attorney to perform effectively and competently.

The imposition of *defacto* life sentences is rare, usually imposed for violent crimes with significant prior records or with repeated histories of dangerous sexual offending.

The United States Sentencing Commission summarized the imposition of life sentences or *defacto* life sentences as follows:

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-7

"Federal courts rarely impose life imprisonment sentences or *defacto* life sentences of at least 470 months. Just 0.4 percent of offenders sentenced during the six-year period examined in this report received life imprisonment or *defacto* life sentences. In any one fiscal year between 2016 and 2021, the highest number of offenders sentenced to life imprisonment was 156. Comparatively, the highest number of offenders receiving a *defacto* life sentence during the same time-frame was 150. Offenders sentenced by federal courts to life imprisonment or *defacto* life commit serious crimes that are usually violent, such as murder and sexual abuse. Offenders sentenced to life imprisonment and *defacto* life frequently have aggravating role adjustments and are more likely than the remaining federal offender population to receive a weapons enhancement at sentencing. Offenders sentenced to life imprisonment and *defacto* life were also more likely to target vulnerable victims or receive a hate crime enhancement, and target official victims, compared to federal offenders with shorter sentence offenders receiving life imprisonment or *defacto* life sentences often had long criminal careers, with some starting as juveniles and spanning decades. A majority of both offenders sentenced to life imprisonment and *defacto* life had a history of violent offenses. Numerous offenders had histories of repeat and dangerous sexual offending. While life imprisonment and *defacto* life sentences affect only a small proportion of the federal offender population, these sentences set them apart from all other offenders in federal cases." *LIFE IN THE FEDERAL SYSTEM US. SENTENCING COMM. United States Sentencing Commission July 21, 2022, p. 25*

## G. THE COURT'S SENTENCE APPEARS AT VARIANCE WITH THE COURT'S STATED DESIGN AND INTENT AT SENTENCING.

The presiding Court's sentence appears at variance with the Court's stated design and intent at sentencing. The Court addressed the lengthy sentence as follows:

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-8

"It seems to me that there is not a need in this case to do anything but impose a sentence that is substantial, that will provide the victim with assurance that she will not have to worry about any further contact with Mr. Boam **until she is really almost middle aged**":

## H. THE SENTENCE DOES NOT COMPORT WITH THE COURT'S IMPLIED INTENT

This Court stated in its sentencing decision "But I think the idea of turning our prisons into geriatric facilities is just not something that I felt really is a good purpose, a good use of our federal prisons." (Tr. p. 1105, l. 14-17)

However, the court, in fact, gave defendant a *defacto* life sentence. (*See U.S. Sentencing Commission supra*) The defendant was thirty nine (39) years old at the time of the imposition of the sentence. The sentence imposed against defendant sets his release from prison when he is eighty four (84) years old. Life expectancy for a non-incarcerated man is eighty one and 9/10 (81.9) years. Lifetime incarceration reduces the life expectancy time significantly. This is in fact a *defacto* life sentence, where defendant will eventually be a geriatric patient in prison until his death.

The stepdaughter was seventeen (17) years old at the time of trial. (Tr. p. 475, l. 11). It is uncertain as to what the Court considered "almost middle aged." Middle aged is often considered age thirty five (35) to forty five (45). Defendant will not be released for forty five (45) years. The victim will be sixty two (62) years of age, far beyond "almost middle aged".

## I. INEFFECTIVE ASSISTANCE OF COUNSEL--BIZARRE BEHAVIOR

Incredibly Mr. Dunn filed a Motion to Reconsider to allow an expert witness, Ms. Wright a licensed social worker, Mr. Dunn's filings contained a compilation of statements from supporters of the defendant. The written statements from supporters of the defendant **were**

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-9

**solicited by Mr. Dunn during the trial.** (Hailey Boam *Declaration* attached hereto as

**Attachment C)** Mr. Dunn misrepresented to the Court when questioned by the Court that he did

not solicit these statements (Tr. p. 888, l. 1-15) The supporters in their letters expressed

disagreement with the Court's rulings and suggested they would be very public in their

criticisms. The letters criticized the legal system; it stated that the defendant was innocent and

was essentially being railroaded. The letters stated the defendant was not getting a fair trial, and

the "Judge and prosecutor don't want the defendant's evidence to get in."

The Court indicated that his filing attaching these written statements was a violation of

ethical responsibilities by Mr. Dunn. The Court further stated:

> You know I have been doing this job for 33 years. I
> have been criticized many, many times. You can't be
> a judge without---that's just part of the job and I
> accept that.
>
> But what I don't expect is for counsel to in essence
> submit that criticism to the Court in support of a
> motion. **That's something I have never seen**
> **before, and I had to wonder about the propriety of**
> **that." (Tr. p. 888, l. 19-25)** (emphasis added)

The Court then, with extraordinary restraint, took the time to attempt to educate Mr.

Dunn on exhibit and witness disclosure requirements and expert disclosure requirements. The

Court reviewed the rules in detail, and referred to Dkt, 64 which was Dunn's disclosure,

essentially devoid of the proper and necessary disclosure requirements. (Tr. p. 901-904)

## J.  INEFFECTIVE ASSISTANCE OF COUNSEL RE: THE PLEA OFFER.

Under the Sixth Amendment to the U.S. Constitution, a defendant is entitled to the

effective assistance of counsel during plea negotiations. *McMann v. Richardson,* 397 U.S. 759

(1970). Advising a client whether to enter a guilty plea is subject to the same two-part test for

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET
ASIDE JUDGMENT-10

ineffective assistance of counsel set forth in *Strickland, supra.* Under that test, counsel is ineffective if (1) the representation falls below an objective standard of reasonableness; and, (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

Where a defendant shows that his or her attorney's ineffective advice led to the improvident acceptance of a plea agreement, the second part of the *Strickland* inquiry focuses on whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Where a defendant shows that his or her trial attorney's ineffective advice led to the improvident rejection of a plea offer, the inquiry focuses on whether "there is a reasonable probability the plea offer would have been presented to the court . . .that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (remanding for determination of appropriate remedy). Resolution of claims of ineffective-assistance of counsel are fact specific.

### a) **REJECTION OF MORE FAVORABLE STATE PLEA AGREEMENT:**

The government communicated with the Jefferson County prosecutor and Mr. Boam's defense counsel, at the State level, Dan Dumar, Esq., that should TJ agree and plead to the state charge, that subject to conditions, they would not pursue the matter. T.J. Boam entered into a written plea agreement on January 21, 2020, with a plea of guilty to a felony before the Jefferson County District Court. (State of Idaho v. T.J. Boam, Case no. CR26-19-2518) **(Attachment D)**. The agreement was for a five (5) years fixed, and fifteen years (15) indeterminate, for a twenty

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-11

(20) year unified sentence. A Presentence Investigation and psychosexual evaluation was ordered on January 27, 2020.

After defendant met with Mr. Dunn for advice, Mr. Dunn told the defendant to inform Mr. Dumar to withdraw his guilty plea and that he [Dunn] would represent Boam going forward. On March 18, 2020, there was a Stipulation to withdraw the defendant's guilty plea in the State case. The defendant's pre-trial release was revoked and he was incarcerated.

The State Court action was dismissed on August 27, 2020. The government filed the pending case on August 25, 2020. Mr. Dunn entered his appearance in this case on August 28, 2020.

### b) <u>REJECTION OF SECOND PLEA AGREEMENT AT FEDERAL LEVEL</u>:

The record discloses that on the first day of trial a plea offer was made to the defendant through his counsel Mr. Dunn by the government. Mr. Dunn stated that the offer was communicated to the defendant by both Mr. Murdock and himself and was rejected. Defendant had not been advised of the factual, legal and evidentiary circumstances of his case. Mr. Dunn had not reviewed the Federal Sentencing Guidelines, the potential sentence nor the sentencing adjustments available to defendant before he was advised by Mr. Dunn not to take the plea offer. Mr. Dunn had repeatedly assured the defendant that the government could not "make their case," and that defendant should not take any plea deal.

The defendant was not sufficiently informed to be able to make reasonable competent decisions including the pros and cons of the offered plea agreement. Mr. Dunn had convinced the defendant that the government could not prove their case. Mr. Dunn repeatedly made the following comments to the defendant:

1. They couldn't lose this case.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET
ASIDE JUDGMENT-12

2. It's a very valid case.

3. The plea bargain was not fair.

4. That he should not take the plea bargain.

5. The court must let his evidence in at trial.

6. There was no proof that defendant knew they were in his phone or that he had ever viewed them.

7. A video of a teenager in a shower was not sexually explicit.

8. Nude videos can be art.

9. Rapists are always on top, not on bottom.

10. The videos only showed hygienic activities.

11. There was no evidence of sexual gratification.

12. The victim's interviews were inconsistent and unreliable.

13. The hotel sexual assault issue was not charged, and he could not be convicted of something not charged and that that evidence could not be used by the government as it was far too prejudicial.

14. There was no proof defendant downloaded the videos.

15. Many people had access to the phones.

16. Defendant was advised to plead not guilty as Mr. Dunn was certain he would be found not guilty.

17. Defendant was informed that Mr. Dunn would introduce the forensic interviews to impeach the victim's testimony.

18. The defendant was told by Mr. Dunn that the government could not use circumstantial evidence and that the jury couldn't decide a case based on circumstantial evidence. The jury must find guilt beyond a reasonable doubt.

**IN ADDITION:**

19. Mr. Dunn did not review the circumstantial evidence with defendant nor properly advise defendant of all of the legal and factual information essential to make an informed decision.

20. At the time of the plea offer, defendant had no knowledge and was not advised by Mr. Dunn of the sentencing guidelines, the point system, adjustments available, nor what his sentence could be imposed by the Court should he reject the offer and proceed to trial.

21. Defendant was unaware, until argued at trial, that Mr. Dunn had not timely or properly disclosed his exhibits, witnesses and experts.

22. Defendant was never informed that he could receive a *defacto* life sentence. Defendant did not understand the possible maximum sentence he faced if he went to trial and was found guilty. This lack of advice and knowledge, **never** gave defendant the opportunity to

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-13

weigh the pros and cons of accepting the plea offer or proceeding to trial.

23. Mr. Dunn did not tell the defendant that Judge Bush ordered that the polygraph tests were not admissible.  Mr. Dunn did not inform defendant that he [Mr. Dunn] had a second opportunity to clarify his request for admission of the polygraph tests.

24. After an evidentiary hearing before Judge Bush, Mr. Dunn informed the defendant that Judge Bush understood his [the defendant's] case, and that is what was going to win this case.  Later when defendant learned that Judge Winmill was the trial judge in this matter, Mr. Dunn then informed defendant that he had talked with someone in the court, who said Judge Winmill was a very liberal judge would benefit him [defendant].

25. Dunn informed defendant that he [Mr. Dunn] had found emails from Melissa Boam, the mother of the victim, which verified she gave the minor [victim] Ambien.  This "evidence" was never introduced into court.

26. Mr. Dunn represented to defendant that Carrie Wright LSW would testify that the forensic interviews were improperly conducted, and that this was a false memory, which she would address at trial.

## K.  FAILURE TO  TIMELY DISCLOSE WITNESSES, EXPERTS AND EXHIBITS

A lifetime prosecutor with thirty four years of experience prosecuting criminal cases, failed to timely disclose witnesses, exhibits and experts in a federal case involving potentially extremely long sentences. (Dkt. 11, CR. 16; Order Dockett No. 99-Order in Limine)  Mr. Dunn's failure continued even after he had been warned by the Court. (Tr. p. 934-936)  This is an inexcusable elementary responsibility of any attorney at any level of time in practice knows and understands.

## L.  FAILURE TO PRESENT RELEVANT QUALIFIED EXPERTS

Mr. Dunn called Lynn Bonser as his technical expert regarding cell phone storage, and

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET
ASIDE JUDGMENT-14

ICloud storage. Mr. Bonser had no credible evidence to present to rebut the government's evidence. There appeared to be no purpose in calling Mr. Bonser as he became a corroborated government witness.

## M. ATTEMPTED TO CALL IRRELEVANT UNQUALLIFIED NON-DISCLOSED EXPERT:

Mr. Dunn disclosed Carrie Wright, LSW without compliance with the mandatory expert disclosure requirements. Mr. Dunn filed three (3) separate motions to have her testify, without setting forth any factual basis, legal basis or authority. (Tr. p. 892, l. 6-9). Further, Mr. Dunn indicated she [Carrie Wright] would testify at trial about counselling the defendant for his marital problems. The Court ruled that there was no legal basis for her testimony.

## N. DUNN FAILED TO FOLLOW UP WITH POLYGRAPH EVIDENCE FOR DEFENSE OF 404(b) EVIDENCE MOTION:

Dunn attempted to call Dale Rogers, as his witness to establish that Mr. Rogers administered two polygraphs of the defendant and the defendant passed both polygraphs. Judge Bush, handling a pre-trial hearing in this matter, denied Mr. Dunn's request to use polygraph, **without prejudice.** However, Judge Bush gave Mr. Dunn the opportunity to resubmit his motion with additional information identifying specifically what he was requesting be admitted from the polygraph. Mr. Dunn did not submit any additional motion or information to the Court. (Dkt. 54). The polygraph results confirmed that defendant did not commit some of the acts accused and was essential to rebut the evidence requested to be admitted in the government's 404(b) Motion.

## O. DUNN DID NOT RETAIN OR CALL CRITICAL FALSE MEMORY EXPERTS:

Mr. Dunn was aware of the issue of repressed vs. false memories from his discussions with

Wright, defendant and review of the forensic interviews. Mr. Dunn did not present any qualified expert testimony on this significant issue.

### P. MR. DUNN DID NOT ADEQUATELY PREPARE, CROSS EXAMINE OR PRESENT ANY EVIDENCE RELATING TO THE THREE  CONFLICTING FORENSIC INTERVIEWS.

The evidence indicates the government conducted three forensic interviews of the victim.

**First Interview (9/30/19):** In the first interview nearest in time to the alleged offense, the victim confirmed that there was no inappropriate physical conduct by defendant upon her. The victim makes no mention of taking or being affected by Ambien at any time when she was with defendant.

**Second Interview (12/31/19):** Jefferson County Deputy Johnson was the investigator who scheduled the forensic interviews. After the first forensic interview, when the victim recalled nothing inappropriate by defendant to her, a second forensic interview was scheduled. However, immediately prior to the second interview, Jefferson County Deputy Johnson unilaterally, without consultation with anyone including counselors, required the victim to watch five (5) hand chosen videos. (Tr. p. 157, l. 5-9) The victim specifically testified that Mr. Johnson came into his office and **I had to watch some of the videos.** (Tr. p. 997, l. 12-14) (emphasis added)

This traumatized the victim, causing her to cry. After seeing the nude videos, the victim had a recovered memory of the hotel incident which was the basis of the government's 404(b) motion. The victim stated that she recalled being in the hot tub, taking Ambien, going to the room and being assaulted by the defendant. When asked at trial why she did not mention the Ambien use in the first interview she stated that she did not think it was relevant. (Tr. p. 743, l.1-11) The victim repeated that her memory returned after she had learned of the videos. (Tr. p. 499, l. 6-10)

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-16

There was no cross examination by Mr. Dunn to determine (1) the propriety of showing the victim the videos before the second forensic examination; (2) the Officer's motivation for showing the victim the videos immediately before the second forensic interview; and, (3) why the victim felt she "had" to watch the videos.

This action undoubtedly impacted the victim's state of mind, causing trauma, indignity and anger. The second forensic interview was tainted by Officer Johnson thereby leaving the results suspect.

Further, in the second interview the victim made a strange statement: "I want to say that it has happened multiple times, but I don't remember any of it." (Tr. p. 737, l. 7-13).

Mr. Dunn failed to address this statement further in any manner through cross-examination.

**Third interview (4/2020):** A third forensic interview occurred in April, 2020. This forensic interview was also tainted by the actions of Officer Johnson's requirement that the victim watch the videos.

Verification of damaging memory influence is apparent from the victim's statement "I want to say that it has happened multiple times, but I don't remember any of it." (Tr. p. 737, l. 7-13).

Officer Johnson's tactic requiring the victim to view the videos obviously created a strained relationship between the defendant and the victim.
The victim testified that at the time she was passed out on Ambien at the time of the second alleged sexual contact by defendant. (Tr. p. 502, l. 3-4)

The victim indicates the memories returned as she was on her boyfriend's lap and called them flashbacks. (Tr. p. 503, l. 18-25; p. 504, l. 1-2)

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-17

As stated by Dr. Davis in her analysis "motivations are a primary source of beliefs that people find a way to believe what they want to believe…such changes can result in revised memories."

Officer Johnson testified that he had labeled the victim's new information as memories, nightmares and flashbacks (Tr. p. 170, L. 16-19)

### Q. FAILURE TO IMPEACH INCONSISTENT STATEMENTS OF VICTIM

The victim was inconsistent in her testimony. She testified that while she was "out of it" that defendant initiated physical contact and that she freaked out, jumped off him, left the room and waited in the car. The victim testified that she specifically remembered leaving the room, going to the car, and waiting for him. She also specifically remembered driving them home from the motel. The victim's testimony contradicts her allegations of being out of it, passed out and memory loss experienced while on Ambien. (Tr. p. 496, l. 13-15; p. 497, l. 24-25; p.498, l. 1) The victim also testified that she had forgotten almost everything **because of the Ambien.** (Tr. p. 499, l. 6-10)

Mr. Dunn assured the defendant he would cross-examine the victim, utilizing the forensic interviews, to prove her inconsistent statements. Mr. Dunn did not attempt to use the interviews, though approved to be used by the Court, for impeachment purposes. (Tr. p. 895, l. 16-25)

In the first interview the victim did not mention use of Ambien. In the second and third interviews, the victim testified that she was "knocked out" or "out of it". However, the victim did not disclose nor was she asked to disclose the complete list of medications that she was taking simultaneously with Ambien. The victim identified those additional medications that she was taking drugs at the same time as Ambien included prednisone and medications like Claritin and Zyrtec. (Tr. p. 518, l. 4-11)

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-18

Considering the combination of medications, the passing of more than a year from any alleged event and her lack of memory until seeing the nude videos, combined with Dr. Davis's evaluation regarding recovered memories, significant and critical evidence was as presented to the Court and/or jury which would have in all reasonable probability changed their verdict.

## R. FAILURE TO CHALLENGE LONG TERM MEMORY LOSS

Mr. Dunn failed to object each time the victim gave expert testimony, as a lay witness, claiming her long term memory loss was caused by her use of Ambien. There was neither foundation established, nor expert qualifications sufficient to permit introduction of expert testimony by this witness. Mr. Dunn did not object nor call experts to testify as to the lack of scientific evidence of Ambien causing long term memory loss.

## S. REPRESSED MEMORY vs. FALSE MEMORY

Attached is a Declaration and written report (**Attachment E**) from Deborah Davis, PH.D. Dr. Davis addresses the issue of recovered memories. After Dr. Davis' thorough examination of the relevant information from the trial transcript, forensic interview videos, and investigative reports, Dr. Davis concluded the accounts of the victim concerning her recovered memories are highly unlikely and more probable impossible. Dr. Davis concludes that the accounts given by the victim cannot be considered reliable evidence.

This critical omission necessitate this Court to set aside the conviction of defendant and permit a new trial.

## T. DUNN FAILED TO CALL EXPERT REGARDING LONG TERM EFFECTS OF AMBIEN

There is no competent evidence in the record that Ambien causes long term memory loss.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-19

The issue of Ambien's effect on long term memory is admissible only through a qualified expert after establishing the expert's credentials. The victim testified to only one prior experience of memory loss while on Ambien. Dunn failed to object to the lay witness providing expert testimony.

## U. **THE COURT THOUGHT IT HAD SEEN IT ALL**

It is truly remarkable to review a trial transcript which contains several revealing statements by a Federal Judge with thirty-three years of experience who presumably believed he had "seen it all."

The following are some of the statements by the Court during the trial:

**I have never seen that before.** (Tr. p. 888, l. 23-25)

**I have to wonder about the propriety of that.** (Tr. p. 888, l. 1-25)

**The game is not worth the candle.** (Tr. p. 465, l. 1-5)

There are few reasonable conclusions that can be drawn from Mr. Dunn's actions other than profoundly incompetent counsel at a level far below an objective standard of reasonableness.

## V. **NEGATIVE IMPACT UP ON THE JURY**

An attorney's demeanor before a jury is incredibly important because it directly impacts the jury's perception of credibility, trustworthiness, and the overall persuasiveness of their case, often influencing the final verdict more than just the legal arguments alone. A positive, confident, and respectful demeanor can significantly enhance the jury's receptiveness to the attorney's presentation, while a negative or unprofessional demeanor can damage their credibility and undermine their case.

## W. **FREQUENT UNINTELLIGLE QUESTIONS AND LACK OF PREPARATION**

Mr. Dunn frequently asked unintelligible questions in the presence of the jury, which

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-20

required the Court to address Dunn. (Tr. p. 843, l.12-15)

Mr. Dunn demonstrated lack of preparation, and professional incompetence throughout the trial.

Mr. Dunn admitted not being able to prepare relevant questions. After long pauses and pressed by the Court, in the presence of the jury, Mr. Dunn stated such things as "I'm trying to think of a relevant question. (Tr. p. 582-583)

### X. CHASTISED IN JURY PRESENCE FOR WASTING TIME

The court informed Dunn he was wasting time on something that means virtually nothing. (Tr. p. 465, l. 1-5)

### Y. IMPOSSIBLE REHABILITATION ATTEMPTS.

During trial Mr. Dunn unsuccessfully attempted to present witnesses to rehabilitate his client, though the client had not testified. (Tr. p.758, l. 8-10)

### Z. LACK OF KNOWLEDGE OF ELEMENTARY RULES

1. In the jury's presence Dunn had to be informed of elementary evidentiary rules i.e., that rebuttal evidence need not be disclosed before trial (Tr. p.927, l. 8-14).

2. Dunn frequently demonstrated in the presence of the jury that he did not understand or comprehend the evidentiary rules of establishing foundation. (Tr. p. 936, l.1-21)

### AA. FAILURE TO COMPLY WITH MANDATORY DISCLOSURE REQUIREMENTS

Mr. Dunn was admonished that he failed to disclose his witnesses and exhibits in a timely manner. Mr. Dunn failed to disclose the required disclosure criteria for an expert witness. The Court indulged Mr. Dunn to the benefit of the defendant, by allowing Mr. Dunn a second chance on this issue if he could establish a good cause for his failure. Mr. Dunn failed to address this issue competently.

### BB. MR. DUNN'S CLOSING ARGUMENT

Unfortunately, Mr. Dunn alienation of the jury started at the beginning of the trial and continued throughout the trial.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-21

True to form, Mr. Dunn's closing argument became the "nail in the coffin" for the defendant.

A closing argument must be carefully prepared to summarize the facts in a logical, honest and dignified manner. It must be designed to increase credibility and trust as well as create a positive impression of the defendant. The message must be logical to the jury in each specific case.

Mr. Dunn delivered poorly considered and bizarre arguments to the jury which obviously alienated the jury against the defendant. Mr. Dunn's arguments included the following:

      a.    Nude photos have a lot of art in them.
      b.    Did the minor do one thing that this court saw or heard from the evidence that was sexually explicit?
      c.    All I watched for sixteen counts was a young girl taking a shower.
      d.    The videos were not sexually explicit, simply T.A. doing hygienic activities.
      e.    Video of T.A. wiping her genitals is a hygienic maneuver.
      f.    The hotel incident was not charged, and he questioned the jury as to why the government would introduce it to the jury.
      g.    The evidence showed Ambien was given to the minor during the hotel incident. The reason they were getting that information was because we want to show that he is a bad guy and has this evil intent.
      h.    If someone is raping or controlling someone you sure are not the one at the bottom, you are the one on the top.

(Sentencing Transcript, p. 41-51)

## CC.   **DUNN FAILED TO REVIEW THE PRESENTENCE REPORT WITH BOAM**

Mr. Dunn admitted he did not read the PSI report to the Boam but claims he verbally told him about it. (Tr. p. 1053, l. 1-2) Mr. Dunn admitted he did not provide and/or leave a copy of the PSI report for defendant at the jail. Mr. Dunn stated to the Court that he was not allowed to leave paperwork at the jail. (Tr. p.1055, l. 13-16) To further exacerbate this issue, Mr. Paskett relayed an unsupported rumor, told to him by Special Agent Brad Roedel, who had **concluded**

from defendant's monitored calls from jail, that defendant "intimated" to various persons with whom he spoke that he was not reviewing the PSI report.

The Declarations by defendant and Hailey Boam attached, as **Attachments A and B** verify that a copy of the PSI report was never delivered by Mr. Dunn to the defendant at the jail. The defendant and Hailey Boam made numerous requests for the PSI report to be provided to defendant at the jail. Hailey Boam's Declaration further supports the arguments contained herein that Mr. Dunn appeared to be impaired and uninvolved in the preparation and trial of this matter.

The Court had to advise Mr. Dunn that it was counsel's responsibility to provide the defendant with a copy of the PSI report. (Sentencing Tr. p. 1053, l. 10-13)

## DD.   THIRTY-TWO MINUTE RECESS FOR BOAM TO READ, REVIEW AND UNDERSTAND AN EIGHTY-THREE (83) PAGE PSI REPORT

The Court noted the defendant had not reviewed the presentence report. The Court was originally going to allow a two (2) day recess in order for the defendant to fully review the PSI report with his attorney. After the statement by Mr. Paskett, the Court then decided to allow a recess, which lasted for a total of thirty-two (32) minutes, for the defendant to read, comprehend and discuss with his client an eighty three (83) page PSI report.

The Federal Sentencing Guidelines are complex even for an experienced attorney. It was realistically impossible for a lay person to review and comprehend the contents at the rate of approximately nine pages per minute.

Defendant reports that he was scared, anxious, weak and his mind was shut down during the break. Defendant indicated he did not and could not read and comprehend the contents under those conditions. Defendant to this day has no idea whether the contents of the PSI report were accurate or if he had any objections to the contents. Defendant has also indicated in his Declaration that to this day he has no understanding of the Federal Sentencing Guidelines.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-23

To bring this failure full circle, the defendant did not even understand what this Court meant when it began talking about the sentencing parameters and specifically when the Court stated "I will adopt the presentence report and addendum to the report as my own findings in this matter." (Tr. p. 1097, l. 8-9)

### EE.   DUNN DID NOT ADVISE OF OR EXPLAIN TO THE DEFENDANT THE SENTENCING GUIDELINES

Mr. Boam was never informed of the federal sentencing guidelines.  Mr. Boam had no concept of the system or how any sentence he might be given would be determined. Defendant was never made aware that that a plea bargain could lessen or lower his sentence he was possibly facing if he went to trial and was found guilty.  Defendant was unaware of the adjustment process in the Federal Sentencing Guidelines and the actual benefit of acceptance of responsibility, truthfulness, and cooperation.  Defendant was not advised of the potential for increased incarceration for taking the matter to trial.  Defendant was constantly informed that he should proceed to trial as there was no proof, he [defendant] ever actually viewed any of the photos. Defendant was further advised that the 404(b) evidence could not be admitted at trial as it was too prejudicial.

### III.

### SUBSTANTIAL PROBABILITY OF DIFFERENT OUTCOME BUT FOR INCOMPETENT COUNSEL

The defendant submits the information contained in Sections I and II above is overwhelming evidence of constitutionally deficient performance below an objective standard of reasonableness.

The defendant submits that the acts and omissions of Mr. Dunn clearly establish prejudice i.e. but for counsel's deficient performance, the result of the outcome would have been different.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-24

## A.  DEFENDANT'S VULNERABILITY:

Defendant had been a farmer since graduating from high school.  Defendant did not involve himself in anything outside his farming activities.  Defendant was and is a simple man with a minimum education.  Defendant had no prior significant record, and no prior involvement with law enforcement or attorneys.  Defendant became increasingly depressed and afraid throughout this case.

Once the defendant retained Mr. Dunn, the defendant was completely reliant on the advice and direction from his attorney.  With no prior contact with the legal system he was fated to follow the advice of Mr. Dunn.

Defendant followed the ineffective advice of his attorney to his detriment.

## B.  PROFOUNDLY DEFICIENT CONDUCT:

Mr. Dunn's entire performance from pre-trial order compliance through sentencing was profoundly deficient.  Mr. Dunn's inadequacies permeated the entire legal process essentially guaranteeing unfair treatment and conviction of the defendant.  The continual sequence of errors and actions degraded he legal profession to the jury and exponentially thereafter.  The totality of Mr. Dunn's trial performance undermined any potential defense and assured conviction.  The results of the trial would have been different had Mr. Dunn performed reasonably.

## C.  INABILITY/IMPAIRMENT OF MR. DUNN PERMEATED AT TRIAL:

Mr. Dunn was obviously mentally impaired and incapable of reasonable representation of defendant.  Mr. Dunn was unable to perform elementary functions of a licensed, practicing attorney.  The results of the trial were a foregone conclusion from the beginning…which would have been different with competent counsel.

## D.  MR. DUNN CAUSED MR. BOAM TO REJECT TWO FAVORABLE PLEA AGREEMENTS:

Under the Sixth Amendment to the U.S. Constitution, a defendant is entitled to the effective assistance of counsel during plea negotiations.  From the inception of Mr. Dunn's services until

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-25

the jury verdict, Mr. Dunn assured the defendant that he would be found innocent. Mr. Dunn

reinforced this assurance with the same comments made to defendant during trial. Mr. Dunn

advised the defendant not to accept the plea offer. Mr. Dunn described the criminal indictment

and stated numerous times:

1. There was no proof he [defendant] downloaded the videos.
2. Many individuals had access to the phones.
3. There was no proof that Mr. Boam saw the videos.
4. The videos were not sexually explicit.
5. Nude photos are not *per se* sexually explicit.
6. The hotel incident was not charged and it would not be evidence at trial.
7. The victim's testimony was inconsistent from one interview to the next and the jury would not believe she was credible.
8. It would be proven that the camera was placed there for home protection.
9. There was no evidence of sexual gratification.
10. Dunn had previously tried hundreds of cases and had this "under control" and he knew how to "work the system."

When the plea agreement was presented, the defendant had no independent knowledge or basis

to weigh the offer. Defendant was never advised as to the severity of his potential sentence, nor

of the Federal Sentencing Guidelines and the adjustments contained in the Guidelines.

Defendant never heard of circumstantial evidence before the trial and his counsel, Mr. Dunn,

never explained this type of evidence to the defendant. Defendant now indicates that he has a

better understanding of his prior circumstances as well as the deficiencies of his attorney. The

defendant now understands what circumstantial evidence is and the criteria for the 404(b)

evidence. In hindsight, defendant submits he would have seriously considered the plea

agreement offer. However, based on Mr. Dunn's statements and representations to the defendant,

the defendant dismissed the offer without consideration.

## E. IMPROPER ADMISSION OF 404(b) EVIDENCE:

The testimony relating to the sexual assault of the minor at the hotel and at the home she

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET
ASIDE JUDGMENT-26

occupied with her mother and defendant was devastating testimony which solidified defendant's guilt in the minds of the jury.

Mr. Dunn failed to cross-examine the minor on her inconsistent statements and testimony. Victim consistently testified that when given Ambien she was "out of it" and "passed out" after taking it.

The victim did not mention the Ambien in the first interview. She testified in the second interview to use, and being "out of it" in the hotel, but contradicted her testimony when she stated that she jumped up, went to the car, waited for the defendant, and drove the two of them home.

Secondly, there was no admissible expert testimony as to the short term or long-term effects of Ambien. Mr. Dunn failed to object to the lay witness providing expert testimony regarding drug side effects. No foundation was laid for her testimony. Further, she remembered the hotel incident only after she was shown the videos of her naked in the shower, which traumatized her.

Third, Mr. Dunn did not question the minor concerning her failure to mention Ambien in the first interview, as she said, "she didn't think it was relevant." Who informed her of the relevance?

Fourth, the 404(b) evidence would not been admitted had Mr. Dunn presented relevant expert testimony. The *Declaration of Deborah Davis, Ph.D.,* **Attachment C,** establishes that fact.

F.   **DUNN DID NOT PRESENT EXPERT TESTIMONY ON RECOVERED vs. FALSE MEMORY:**

The Declaration of Dr. Debra Davis attached as **Attachment C** hereto verifies that the issue of repressed memories vs. false memories is an issue of significant importance. This testimony was not presented by Mr. Dunn. Defendant submits he should be granted a new trial, due to the failure of counsel to present expert testimony on this issue. Dr. Davis's Declaration supports the defendant's claim that the ineffective assistance of counsel resulted in a reasonably probable miscarriage of justice.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-27

## G. DUNN FAILED TO EXHAUST HIS REMEDIES FOR THE ADMISSION OF THE POLYGRAPH EXAMINATIONS:

Mr. Dunn failed to file pleadings with the Court (Judge Bush) to designate exactly what Mr. Dunn was requesting be admitted in evidence from the polygraphs. There was a potential that compliance may have resulted in the admission of portions of the polygraph results which supported his denial of some or all the allegations against him.

## H. INEFFECTIVE ASSISTANCE AT SENTENCING:

Defendant's constitutional right to competent counsel at sentencing was denied. On the date and time of sentencing, Mr. Dunn had never read and reviewed the PSI report with the defendant. Mr. Dunn stated to the Court that he was prohibited from leaving it with the defendant at the jail. Mr. Paskett, one of the plaintiff's attorneys, indicated that he had been told it appeared that a copy was at the jail, but rumors indicated he refused to read it.

The declaration from the defendant verifies that he did not know a copy of the PSI report was available and Mr. Dunn never provided him a copy prior to the date of sentencing.

The Court called a recess to give the defendant time to read the PSI report. The PSI report was eighty three (83) pages in length and the recess lasted for thirty two (32) minutes.

Defendant's Declaration establishes that he had no time to read the complete PSI report and complied with his attorney's advice to say he had and move forward. Mr. Boam never had an opportunity to review it for errors, or to enable him to make relevant comments.

## I. ALIENATION OF JURY DURING CLOSING STATEMENT:

Mr. Dunn used extremely poor judgment in his closing argument. The comments were deplorable and guaranteed to alienate the jury. The jury sat through a trial where Mr. Dunn repeatedly asked irrelevant and/or incomprehensible questions and failed to present any logical meaningful defense.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET ASIDE JUDGMENT-28

The combination of Mr. Dunn's irrefutable ineffective assistance of counsel, combined with the arguments assured to alienate a jury presents a reasonable probability that but for the counsel's unprofessional errors, the results would have been different.

Dated this March 6, 2025.

STEPHEN S. HART, ESQ.
Attorney for Defendant

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET
ASIDE JUDGMENT-29

CERIFICATE OF SERVICE

I hereby certify that on March 6, 2025, I served a copy of the foregoing document

through CM/ECF on all registered participants to the action, as reflected in the NOTICE OF

ELECTRONIC FILING registry, as noted in the official case registry, including:

**WILLIAM M. HUMPHRIES**
United States Attorney's Office
bill.humphries@usdoj.gov

**JUSTIN K. PASKETT**
United States Attorney's Office
Justin.paskett@usdoj.gov

**JOHN CHRISTOPHER SHIRTS**
DOJ-USAO
johnshirts@usdoj.gov

STEPHEN S. HART, ESQ.
Attorney for Defendant

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR SET
ASIDE JUDGMENT-30